**CRATTY v. UNITED STATES.**

**PULLMAN v. SAME.**

Nos. 9271, 9296.

United States Court of Appeals

District of Columbia.

Argued March 3, 1947.

Decided June 9, 1947.

Mr. Saul G. Lichtenberg, of Washington, D. C., (appointed by this Court), for appellant Fred I. Cratty.

Mr. M. Edward Buckley, Jr., of Washington, D. C., for appellant Charles W. Pullman.

Mr. John D. Lane, of Washington, D. C., Assistant United States Attorney, with whom Messrs. George Morris Fay, United States Attorney, Cecil R. Heflin and Sidney S. Sachs, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for the United States. Mr. Edward M. Curran, United States Attorney, of Washington, D. C., at the time the records were filed, also entered an appearance for the United States.

Before STEPHENS, EDGERTON and WILBUR K. MILLER, Associate Justices.

STEPHENS, Associate Justice.

These are appeals from convictions in the District Court of the United States for the District of Columbia of violation of the Marihuana Tax Act of 1937, 50 Stat. 551, as amended, Act Feb. 10, 1939, 53 Stat. 279, §§ 2590–2602, March 8, 1946, 60 Stat. 40, § 2591(e), 26 U.S.C.A. §§ 2590–2602, 26 U.S.C.A. § 2591(e). The pertinent portions of that statute are set forth in the margin.[1] The appellants Cratty and Pullman, hereinafter for convenience sometimes referred to

---

[1] "SEC. 2590. TAX.

"(a) *Rate.*—There shall be levied, collected, and paid upon all transfers of marihuana which are required by section 2591 to be carried out in pursuance of written order forms taxes at the following rates:

"(1) Transfers to special taxpayers. —Upon each transfer to any person who has paid the special tax and registered under sections 3230 and 3231, $1 per ounce of marihuana or fraction thereof.

"(2) Transfers to others.—Upon each transfer to any person who has not paid the special tax and registered under sections 3230 and 3231, $100 per ounce of marihuana or fraction thereof.

"(b) *By Whom Paid.*—Such tax shall be paid by the transferee at the time of securing each order form and shall be in addition to the price of such form. Such transferee shall be liable for the tax imposed by this section but in the event

that the transfer is made in violation of section 2591 without an order form and without payment of the transfer tax imposed by this section, the transferor shall also be liable for such tax.

"(c) *How Paid.*—

"(1) Stamps.—Payment of the tax herein provided shall be represented by appropriate stamps to be provided by the Secretary.

"(2) Assessment.— . . .

"(d) *Registration and Special Tax.*— . . . "

"SEC. 2591. ORDER FORMS.

"(a) *General Requirement.*—It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 3230 and 3231, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary.

"(b) *Exceptions.*—Subject to such regulations as the Secretary may prescribe,

by those names, were indicted jointly on February 19, 1945, and were jointly tried. The indictment contains six counts. Counts 1, 3 and 5 charge a violation of Section 2591(a) making it unlawful for any person not within the exceptions specified in the statute to transfer marihuana except in pursuance of a written order, of the person to whom such marihuana is transferred, on a form to be issued in blank by the Secretary of the Treasury. Counts 2, 4 and 6 charge a violation of Section 2590(a) requiring the payment of taxes at specified rates upon all transfers of marihuana which are required by Section 2591 to be carried out in pursuance of written order forms.

Specifically, count 1 charges that Pullman and Cratty on November 1, 1944, in the District of Columbia, unlawfully, fraudulently, feloniously and knowingly transferred to one Jack Goodman ten marihuana cigarettes and that the transfer was not made in pursuance of a written order of Goodman on the required form. Count 3 contains a similar charge relating to November 2, 1944, and count 5 a charge relating to November 7, 1944, similar in other respects to the charges in counts 1 and 3 except that the transfer is alleged to have been made to Goodman and one Hyman J. Spitalnick and that the marihuana is designated as a quantity of two hundred and

nothing contained in this section shall apply [to]—

    "(1) Professional Practice.—. . .
    "(2) Prescriptions.—. . .
    "(3) Exportation.—. . .
    "(4) Government and state officials. —. . .
    "(5) Certain seeds.—. . .

"(c) *Supply.*—The Secretary shall cause suitable forms to be prepared for the purposes before mentioned and shall cause them to be distributed to collectors for sale. The price at which such forms shall be sold by said collectors shall be fixed by the Secretary. but shall not exceed 2 cents each. Whenever any collector shall sell any of such forms he shall cause the date of sale, the name and address of the proposed vendor, the name and address of the purchaser, and the amount of marihuana ordered to be plainly written or stamped thereon before delivering the same.

"(d) *Preservation.*—Each such order form sold by a collector shall be prepared by him and shall include an original and two copies, any one of which shall be admissible in evidence as an original. The original and one copy shall be given by the collector to the purchaser thereof. The original shall in turn be given by the purchaser thereof to any person who shall, in pursuance thereof, transfer marihuana to him and shall be preserved by such person for a period of two years so as to be readily accessible for inspection by any officer, agent, or employee mentioned in section 2595. The copy given to the purchaser by the collector shall be retained by the purchaser and preserved for a period of two years so as to be readily accessible to inspection by any officer, agent, or employee mentioned in section 2595. The second copy shall be preserved in the records of the collector.

"(e) *Exemption for Certain Transfers to Millers.*— . . ."

"SEC. 2592. STAMPS.

"(a) *Affixing.*—The stamps provided in section 2590 (c) (1) shall be affixed by the collector or his representative to the original order form.

"(b) *Other Laws Applicable.*—. . .

"(c) *Cross Reference.*—. . ."

"SEC. 2593. UNLAWFUL POSSESSION.

"(a) *Persons in General.*—It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 2590 (a) to acquire or otherwise obtain any marihuana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form required by section 2591 to be retained by him, shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 2590 (a).

"(b) *Government and State Officials.*— . . ."

    * * *

"SEC. 2596. PENALTIES.

"Any person who is convicted of a violation of any provision of this subchapter shall be fined not more than $2 000 or imprisoned not more than five years, or both, in the discretion of the court."

Sections 3230 and 3231, referred to in Section 2590 (a) (1) and (2) and in Section 2591 (a), relate to importers, manufacturers, compounders, producers, physicians, dentists, veterinary surgeons and other practitioners, persons engaged in research, instruction, or analysis, persons not otherwise taxed, and millers, in respect of whom it is provided that there shall be a special tax, and registration with the collector of the district in which the place of business of such persons is located.

twenty grains. Count 2 charges that Pullman and Cratty on November 1, 1944, in the District of Columbia, "being then and there transferees of Marihuana, and being then and there transferees required to pay the transfer tax," did knowingly, unlawfully and feloniously acquire or otherwise obtain ten marihuana cigarettes without having paid the tax. Count 4 contains a similar charge relating to November 2, 1944, and count 6 a charge relating to November 7, 1944, and similar in other respects to the charges in counts 2 and 4 except that it describes the marihuana as being in the amount of two hundred and twenty grains. It will be noted that in counts 1, 3 and 5, Pullman and Cratty are charged, within Section 2591(a), as transferors of marihuana to Goodman (counts 1 and 3) and to Goodman and Spitalnick (count 5), whereas in counts 2, 4 and 6· they are charged, within Section 2590(a), as transferees, no mention being made of a transferor. Although it is not specifically referred to in the indictment, reliance in respect of counts 2, 4 and 6 is necessarily also upon Section 2590(b) because it is that subparagraph which makes a transferee, as well as a transferor, liable for the tax imposed by the section.

Summarily stated, the evidence was to the following effect:

> Ralph B. Mullis, alias Jack Goodman, a Bureau of Narcotics informer, with a record of convictions for white slavery and and grand and petit larceny, had known Cratty and Pullman for two or three years. On November 1, 1944, at about 1:30 a. m., Mullis saw Pullman at Thomas Circle in the District of Columbia and talked to him about the sale of marihuana cigarettes. Pullman did not then have any but thought that he could get some if Mullis would meet him in half an hour in front of the Greyhound bus station. Mullis and a Bureau of Narcotics agent named Spitalnick went to the bus station and there the agent searched Mullis and found no marihuana upon him. Mullis then met Pullman outside the bus station. Pullman told him that he would supply him with a telephone number through which he could get marihuana at any time. Mullis then crossed New York Avenue with Pullman to a taxicab and as they approached it, Cratty got out and handed Pullman ten marihuana cigarettes. Pullman gave these to Mullis in exchange for $5 furnished Mullis by Spitalnick. Mullis returned to Spitalnick and delivered the cigarettes to him. Mullis gave Cratty and Pullman no order form.
>
> On November 2, in the morning, at the Peoples Drug Store on Thomas Circle, Mullis and Pullman again had a conversation about the sale of marihuana. Pullman said that he would first have to make a telephone call and did so. Mullis and Spitalnick went to 16th and S Streets, N. W., where Cratty appeared. He told Spitalnick and Mullis that he had no marihuana. Spitalnick and Mullis then returned to Thomas Circle where Mullis met Cratty. Mullis and Cratty walked up by a church on the Circle and there Cratty sold him ten marihuana cigarettes for $5, again furnished by Spitalnick. Mullis gave Cratty no order form.
>
> On November 7, about 1:30 a. m., at 14th and L Streets, N. W., Mullis met Cratty and one Boham who asked Mullis if he wanted a "pick-up." Mullis claimed to be "broke," whereupon Cratty inquired whether Mullis could not get the person who went around with him "to spring" for an ounce as he, Cratty, was getting out of town. Mullis then, by agreement, met Cratty at a jewelry store in the Colorado Building at 4:30 in the afternoon and there gave Cratty $10 furnished by Spitalnick; Spitalnick gave Cratty an additional $10. Cratty then left a paper bag lying on a radiator in the lobby stating that it contained "a good ounce" and he and Boham then left. Mullis gave the bag to Spitalnick. Neither he nor Spitalnick had an order for this marihuana.

Evidence to the foregoing effect was supplied by Mullis, alias Goodman.

> In March, 1945, in the presence of Pullman's attorney and in his office, demand was made by the Collector of Internal Revenue, Baltimore, Maryland, upon Pullman for a 1944 order form in connection with the sale of marihuana. A similar demand was made on Cratty in the courtroom lobby on the morning of the opening of the trial on March 4, 1946. Both Pullman and Cratty stated that they had no order form. Copies of written requests by the Collector for order forms were introduced in evidence.

The evidence of the Collector's demand and non-compliance therewith was supplied by Harley K. McVicker, the Collector above referred to.

Corroborating evidence supplied by the Bureau of Narcotics agent Spitalnick was to the following effect:

> On November 1 a conversation about the sale of marihuana between Mullis and Pullman was held in Spitalnick's presence. Spitalnick searched Mullis in the

bus station and supplied him with $5. Thereafter Spitalnick stood outside the bus station with Mullis and observed Pullman come up and motion Mullis to follow him. Mullis and Pullman disappeared through the park but Mullis shortly returned and had in his possession ten marihuana cigarettes and did not have the $5 which Spitalnick had just given him.

On November 2, at the D. C. Diner, Spitalnick searched Mullis and gave him $5. At about 1 a. m., a conversation between Mullis and Pullman about the sale of marihuana was held in Spitalnick's presence at the Peoples Drug Store on Thomas Circle, and he was present when Cratty met Mullis at 16th and S Streets, N. W., and told Mullis that he then had no marihuana. About half an hour later at Thomas Circle Spitalnick, from a restaurant, saw Cratty and observed Mullis meet him and walk away with him. Thereafter when Mullis returned, Spitalnick searched him and found ten marihuana cigarettes and did not find the $5 which he had theretofore given him.

On November 7 a sale of bulk marihuana by Cratty was to both Spitalnick and Mullis. Cratty on this occasion discussed the transaction with Spitalnick who personally paid to Cratty $10 of the purchase money.

Evidence was supplied by Albert A. Spear, a chemist in the employ of the Bureau of Internal Revenue, to the effect that:

The cigarettes referred to in the evidence were marihuana cigarettes and the bag contained two hundred and twenty grains of marihuana.

After the introduction of evidence to the foregoing effect, the Government rested. Motion for directed verdict was then made as to Pullman in respect of counts 5 and 6 upon the ground that there was no evidence of any participation by him in the transaction of November 7, 1944, to which those two counts relate. This motion was granted. Motion was then made in behalf of Pullman in respect of counts 1, 2, 3 and 4 for a directed verdict upon the ground that the Government's evidence disclosed entrapment. Thereupon the trial court, upon request of the Government, reopened the case and permitted the Government to call the witness Spitalnick and another Bureau of Narcotics agent, one Albert R. Bendon. These witnesses testified to the following effect:

Spitalnick, before he directed Mullis to contact Pullman, had information from a reliable source that Pullman had been engaged in the sale of marihuana cigarettes. He had, moreover, seen Pullman associating with marihuana users.

Bendon, prior to the time that Mullis got in touch with Pullman, had received information through federal channels from two sources, both of which he regarded as reliable, that Pullman was engaged in marihuana traffic. He first received such information during August, 1944, and an investigation was made at that time leading up to a verification of such information. The information was supplied him for action as an agent of the Bureau of Narcotics.

There was no objection by either Pullman or Cratty to the competency of this testimony of Spitalnick and Bendon.

The Government then re-rested its case and both defendants rested. The motion for directed verdict made in behalf of Pullman in respect of counts 1, 2, 3 and 4 on the ground of entrapment was overruled. But the court submitted to the jury an issue of entrapment in respect of Pullman. The court stated that "entrapment . . . is not involved in the Crotty [sic] case." Counsel for Cratty did not join in Pullman's motion for directed verdict, did not argue the issue of entrapment to the jury in Cratty's behalf, did not request an instruction on entrapment for Cratty. It having been made to appear, as above stated, that the informer Mullis had a criminal record, the trial court, in instructing the jury as to the considerations which it might apply to the question of the credibility of witnesses, referred to Mullis' criminal record. It did not, however, refer to the question of the weight to be given to the testimony of an informer. No request for an instruction on this specific subject was made in behalf of either Pullman or Cratty. Cratty was found guilty on all six counts, Pullman, on the first four counts only. Cratty was sentenced to one to three years' imprisonment, Pullman from six months to two years.

The points urged in the appellants' brief on appeal are that: (1) The indictment is defective (a) because, according to the evidence, the demand of the Collector for the production of order forms pursuant to

Section 2593(a) of the Marihuana Tax Act was made subsequent to the return of the indictment, and (b) because in each of said counts it is alleged that the transfer of marihuana was at once both legal and illegal. These contentions are made for the first time on appeal. (2) The trial court erred in not instructing the jury as to the credibility of the testimony of an informer. (3) The trial court erred in not directing a verdict on account of entrapment as to both Pullman and Cratty.

█ 1(a). It is not clear from the appellants' brief whether the attack upon the indictment as defective—because demand for order forms by the Collector came after the return of the indictment— is upon the ground that the presumptive evidence of non-payment of the tax (which under Section 2593(a) arises upon failure, after reasonable notice and demand of the Collector, to produce the order form required by Section 2591(d) to be retained by one acquiring marihuana) was not in existence at the time of the indictment or whether it is upon the ground that the failure to produce the order forms after reasonable notice and demand by the Collector is an element of the crimes charged and should therefore have been alleged in the indictment and upon the further ground, under this alternative, that the indictment was premature, one element of the crime having been committed subsequent to its return. We shall therefore discuss each of the two alternatives. As to the first, the attack is without merit because it cannot be presumed that there was no other evidence before the grand jury of non-payment of the tax. Moreover, the attack is too late. It is not an attack upon the jurisdiction of the court and does not assert that the indictment fails to state a public offense. An attack upon an indictment upon grounds other than these must, unless opportunity to make it was lacking, be made before the commencement of trial. Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Breese v. United States, 1912, 226 U.S. 1, 33 S.Ct. 1, 57 L.Ed. 97; Agnew v. United States, 1897, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; Dunbar v. United States, 1895, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed.

390; United States v. Gale, 1883, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857; Dunn v. United States, 10 Cir., 1938, 98 F.2d 119, 117 A.L.R. 1302; Sherman v. United States, 4 Cir., 1935, 80 F.2d 629; Cody v. United States, 9 Cir., 1934, 73 F.2d 180; Friscia v. United States, 5 Cir., 1933, 63 F.2d 977, certiorari denied 1933, 289 U.S. 762, 53 S.Ct. 797, 77 L.Ed. 1505. A fortiori, the attack upon the indictment in the instant case, made for the first time on appeal, is not timely. As to the second alternative, the premise that the failure to produce the order forms on reasonable notice and demand of the Collector is an element of the crimes is not supportable. The gist of the crimes charged in counts 1, 3 and 5, based upon Section 2591(a) of the statute, is transferring marihuana not in pursuance of a written order of the transferee on the required form; the gist of the crimes charged in counts 2, 4 and 6 is non-payment by transferees of marihuana of the required tax. Section 2593(a) relates to a means of proof, not to definition, of the crimes.

█ 1(b). The objection that counts 2, 4 and 6 are defective because they allege that the transfer of marihuana was at once both legal and illegal is based upon the following language of the counts:

> That one Charles W. Pullman and one Fred I. Cratty, on to wit, the . . . day of November, 1944, and at the District of Columbia aforesaid, *being then and there transferees of Marihuana, and being then and there transferees required to pay the transfer tax* imposed by Section 2590(a) of the Internal Revenue Code, did then and there knowingly, unlawfully and feloniously acquire . . . a quantity of Marihuana . . . without having paid the tax on the transfer of said Marihuana to them then and there made . . . . [Italics supplied]

It is asserted that the language "being then and there transferees of Marihuana" charges a legal transfer whereas the remainder of the counts charges an illegal transfer. The counts as phrased are redundant but they are not self-conflicting as asserted and are not fundamentally defective. As a whole they adequately inform each appellant that he is charged with being a transferee of marihuana required to pay the transfer tax and that he nevertheless knowingly, unlawfully and

feloniously acquired a quantity of marihuana without having paid the tax. As stated by the Supreme Court, speaking through Mr. Justice Sutherland, in Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861:

> The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Cochran and Sayre v. United States, 157 U.S. 286, 290 [15 S.Ct. 628, 39 L.Ed. 704]; Rosen v. United States, 161 U.S. 29, 34 [16 S.Ct. 434, 40 L.Ed. 606].

■ 2. The failure to instruct the jury as to credibility of the testimony of an informer is not reversible error in the absence of a request for an instruction on that subject. It is true, as we pointed out in Fletcher v. United States, 1946, 81 U.S. App.D.C. 306, 158 F.2d 321, that the usefulness of an informer as a witness and employee of the Bureau of Narcotics for the purpose of procuring evidence depends wholly upon his ability to make out a case, and that this fact alone bears against the dependability of his testimony. For lack of an instruction in that case on the weight to be given to the testimony of an informer we reversed a conviction. But the Fletcher case is distinguishable from the instant case in that in the former there was no corroboration of the informer's testimony and there was an express request for the instruction and refusal thereof by the trial court; whereas in the instant case there was no request for an instruction and there was corroboration, through the witness Spitalnick, of the testimony of the informer Mullis. In Borum v. United States, 1932, 61 App.D.C. 4, 56 F.2d 301, cert. denied sub nom. Logan v. United States, 1932, 285 U.S. 555, 52 S.Ct. 459, 76 L.Ed. 944, we expressed the view that a trial court should of its own motion caution the jury to weigh the testimony of an accomplice carefully and not to give it too much reliance. But we nevertheless held that in the absence of a request for an instruction to such effect reversal was not permissible. Likewise concerning the testimony of an informer we comment now that the trial court would be well advised to caution the jury as to its dependability, but we are again obliged to rule that in the absence of a request for an instruction on this subject, there is no reversible error. The ruling in Borum v. United States is approved in Johnson v. United States, 1946, 81 U.S.App.D.C. 254, 157 F.2d 209.

■ 3. The contentions concerning entrapment: The contention of Pullman is, in effect, that under the evidence no reasonable juryman could have failed to conclude that entrapment occurred and accordingly the motion for a directed verdict should have been granted. The law with respect to entrapment is settled for the federal courts in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249. The Court there, speaking through Mr. Chief Justice Hughes, phrased it thus:

> It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. [Citing authorities] The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute. [287 U.S. at pages 441, 442, 53 S.Ct. 212]

The Court said, further, quoting from Newman v. United States, 4 Cir., 1924, 299 F. 128, 131:

> . . . "It is well settled that decoys may be used to entrap criminals, and to

present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." . . . [287 U.S. at page 445, 53 S.Ct. 214]

In United States v. Becker, 2 Cir., 1933, 62 F.2d 1007, 1008, the court, in an opinion by Judge Learned Hand, following Sorrells v. United States, said that "it has been uniformly held that when the accused is continuously engaged in the proscribed conduct, it is permissible to provoke him to a particular violation which will be no more than an instance in a uniform series."

In the instant case, as appears from the résumé of their testimony set forth above, the two Government agents, Spitalnick and Bendon, had had reliable information furnished through federal channels that Pullman, prior to the transactions involved in the case, had been engaged in the marihuana cigarette traffic. While this testimony was of conclusional character and was based upon hearsay, as is stated above no objection was made to its competency. Moreover, it appears from the testimony of Mullis and Spitalnick that Pullman had immediate access to marihuana through Cratty. The conduct of Pullman as described in the testimony indicates that he was not an amateur in illicit dealings in marihuana. We think that a reasonable juryman might have concluded not that the criminal design was implanted in the mind of an innocent person by the officials of the Government and commission of the offenses induced by them, but that they were but provoking Pullman to a particular violation in the course of proscribed conduct in which he was continuously engaged. The court therefore did not err in refusing Pullman's motion for a directed verdict.

■■■ As to Cratty: It is clear from the record that Cratty based his whole defense upon the assertion that he did not commit the acts with which he was charged. He did not advance the defense of entrapment. As appears above he made no objection to the statement of the court in the course of its instructions to the jury that "entrapment . . . is not involved in the Crotty [sic] case"; he did not join in the motion of Pullman for a directed verdict. This precludes Cratty from complaining that the court erred in failing to direct a verdict in his favor. Moreover, he was not harmed. The jury concluded that the defense of entrapment had not been made out for Pullman. It must properly have reached the same conclusion as to Cratty had the defense of entrapment been submitted with respect to him. It is clear from the evidence as to the transactions of November 1 and 2 that Cratty in furnishing marihuana did so not at the instance of the informer Mullis but at that of Pullman, who obviously was a confederate. And by the time of the transaction of November 7 in which he did sell to Mullis, Cratty, under the evidence, had twice furnished marihuana to Pullman. The jury must therefore have concluded from his own conduct, had they been considering the issue of entrapment as to Cratty, that he was a person engaged in illicit marihuana traffic, not an innocent person in whose mind the Government implanted a criminal design.

■■■ Other grounds of appeal stated by the appellants but not urged in their brief are that the trial court "lacked power and jurisdiction to impose sentence and was incomplete by reason of lack of a proper petit jury," that each count of the indictment fails to charge a crime, that there was no evidence to sustain the conviction, and that there is no statute covering the crime charged. Since none of these points was urged in the brief, we treat them as abandoned. Moreover, as to the assertion of lack of a proper petit jury, there is nothing in the record indicating any lack. The other items are also obviously without merit.

Judgments affirmed.