**James Murphy DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9830.**

District of Columbia Court of Appeals.

Argued April 4, 1977.

Decided July 25, 1978.

Bennie M. Laughter, Washington, D. C., for appellant. Alan B. Soschin, Washington, D. C., appointed by this court, was on the brief, for appellant.

Mary Ellen Abrecht, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, HARRIS and MACK, Associate Judges.

MACK, Associate Judge:

Appellant challenges his conviction of various violations of the municipal gambling laws, where that conviction resulted primarily from evidence gathered through the use of a pen register and subsequent wiretap of his telephone. We affirm.

Appellant was found guilty by a jury of six counts of the indictment charging him and others with (1) conspiracy to operate a lottery in violation of D.C. Code 1973, § 22–1501; (2) operating a lottery in violation of the same provision; (3) possession of numbers slips in violation of id. § 22–1502; (4) maintaining a premises for gambling purposes in violation of id. § 22–1505; (5) conspiracy to accept wages on horse races in violation of id. § 22–1508; and (6) accepting wagers on horse races in violation of that same provision.

The government's evidence established that during the spring of 1973, the Metropolitan Police Department received information about appellant's gambling activities in the vicinity of 18th Street and Columbia Road, N.W., from an informant who had assisted the FBI with other investigations. As a result of that information, Officers William Wagner and Daniel Dooney conducted a surveillance of 1844 Kalorama Road, N.W. between July 12 and July 28, 1973; they concluded that the premises were being used as an office for a gambling operation, and that the telephone was used to receive information from a race track and to relay that information to other offices. On July 18, the officers observed a man place a paper bag in a trash can in front of 1862 Kalorama Road, N.W., after coming out of 1844 Kalorama Road. Officer Wagner retrieved the bag from the trash can and

found inside a scratch sheet dated July 17, 1973, on which race results were written, and various other papers generally associated with the operation of a numbers lottery. On August 3, the details of their observations and a description of the papers were presented to Judge Edmond Daly with a request for authorization to attach a pen register (a device to record the numbers dialed) to one of the two telephone lines at 1844 Kalorama Road.[1] The pen register was authorized for up to seven days, with a progress report to be given on the fourth day.

The operation of the pen register began on August 4, and revealed a pattern of phone calls supporting the officers' belief that the telephone was being used to conduct a gambling operation. An incoming call would be received every afternoon and would be followed by a number of outgoing calls made in rapid succession. Most of the telephone numbers could not be linked to individuals. On September 10, the officers presented this information to Chief Judge Harold Greene in a request for an authorization for a wiretap of the same telephone, which was granted for a period of fifteen days.

On or about September 15, 1973, Officer Wagner obtained a key from the building manager of 1844 Kalorama Road, entered the apartment building and proceeded to the third floor where he waited in the hall-way outside Apartment 9. At a pre-arranged time, Officer Dooney called the 234-8376 number to verify the location of the telephone. A search warrant was obtained and executed on September 21, 1973; appellant was found inside the apartment and arrested.

Appellant makes numerous assignments of error, three of which merit discussion here: (1) that there was insufficient probable cause to support the court order authorizing attachment of a pen register to the telephone at Kalorama Road; (2) that the trial court erred in not granting a motion to dismiss the indictment based on discriminatory enforcement of local gambling laws; and (3) that the trial court denied appellant his Sixth Amendment Right to compulsory process by quashing subpoenaes served on government officials.[2]

I.

A pen register is a device attached to a given telephone line, usually at a central telephone office. A pulsation of the dial on the line to which the pen register is attached records dashes on a paper tape equal in number to the number dialed. The paper tape then becomes a permanent and complete record of outgoing numbers called on the particular line. With respect to incoming calls, the pen register only records a dash for each ring of the telephone; it does not identify the number from which the

---

1. The only other telephone in the building was listed to the resident manager, who was in no way implicated as being involved in gambling activity.

2. Appellant also contends that the government failed to follow the statutorily required procedures for the use of wiretaps in that it did not seek prior authorization to use the evidence obtained to prove violations of D.C. Code 1973, § 22–1508. Super. Ct. Cr. R. 41–1(a) provides that a wiretap application may be approved only when the interception may provide evidence of an offense listed in D.C. Code 1973, § 23–546(c); that section does not include id. § 22–1508, and requires additional authorization when the contents relate to an offense other than those listed. Appellant argues that because the wiretap uncovered evidence of an additional crime, the government's failure to seek additional authorization bars its use at trial. We disagree. The government informed the court in both its wiretap application and in the affidavit in support of the wiretap warrant that the officers expected to gather information regarding violation of § 22–1508 as well as other statutes. "The purpose of the application requirement relating to other-crimes evidence is to assure that the initial authorization of the tap was proper and did not rest on unsubstantiated assertions as a pretense for a general 'seizure.'" *United States v. Johnson*, 176 U.S.App.D.C. 179, 187, 539 F.2d 181, 189 (1976). There is no question here that the initial authorization was proper, and that the court was informed from the beginning of the range of offenses under investigation. We thus find no merit to appellant's contention that a statutory defect in the wiretap authorization prevents the evidence obtained from being used at trial.

incoming call originated. The pen register cuts off after the number is dialed on outgoing calls and after the ringing is concluded on incoming calls without determining whether the call is completed or the receiver is answered. Thus, there is neither a recording nor a monitoring of the conversation. *United States v. Caplan*, 255 F.Supp. 805, 807 (E.D.Mich.1966); *see also United States v. Guglielmo*, 245 F.Supp. 534, 535 (N.D.Ill.1965), *aff'd sub nom.*, 371 F.2d 176 (7th Cir. 1966).

Appellant's contention, in essence, is that the affidavit in support of the pen register order made an insufficient showing of probable cause. The government contends, on the other hand, that it has never been established in this jurisdiction that it is required to establish probable cause in order to utilize a pen register device.

■ The Supreme Court has recently decided that pen registers do not fall within the scope of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1968) prescribing the procedures by which a wiretap order must be obtained. The Act defines "intercept" to mean "the aural acquisition of the contents of any wire or oral communication . . ." *Id.* § 2510(4). Because they do not accomplish "aural acquisition" or acquire the contents of communications, pen registers fall outside the purview of the Act. Nor° are they otherwise prohibited or regulated by the wiretap provisions of the District of Columbia Code. *See* D.C. Code 1973, §§ 23–541–546. *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). But the Supreme Court has not determined, nor do we, whether a pen register order must be based on a showing of probable cause. *See United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (Mr. Justice Powell, with whom The Chief Justice, Mr. Justice Blackmun, and Mr. Justice Rehnquist join, concurring in part and dissenting in part). We need not decide whether the use of a pen register constitutes a search within the meaning of the 4th Amendment, since, assuming its applicability, the constitutional guarantees were satisfied here.

The affidavit in support of the order indicated that an informant who had been providing information to law enforcement officials for a period of four years told police officers that appellant was involved in a numbers operation in the area of 18th Street and Columbia Road, N.W. The informant said that street writers delivered their work to the Columbia Valet at 2448 18th Street, N.W., and that about 11:00 a. m. the work was transferred by a runner from the Columbia Valet to the main office nearby. The informant also reported that numerous bets were accepted by telephone at the main office. The informant, himself a gambler, obtained this information from conversations with appellant and other gamblers.

On July 12, 1973, Officers Wagner and Dooney began a surveillance of the Columbia Valet. They saw a Mr. Santilli leave the Valet carrying a water jug around 11:00 a. m., and saw him carrying that same jug inside 1844 Kalorama Road. At 6:00 p. m. they saw appellant leave 1844 Kalorama Road carrying a similar jug. On the next day the officers saw Mr. Santilli enter the Columbia Valet at 10:45 a. m. carrying a brown paper bag and leave at 11:08 a. m. carrying a water jug which he again took to 1844 Kalorama Road, N.W. Around 11:30 another man entered 1844 Kalorama Road carrying newspapers and shortly after 12:00 appellant entered. On July 16, 17, 18, 19 & 28, essentially similar observations were made: Mr. Santilli would carry a jug from the Columbia Valet to 1844 Kalorama Road at about 11:00 a. m., and appellant would bring in newspapers about the same time. On July 19, an unidentified man came out of 1844 Kalorama Road and deposited a brown paper bag in a trash can in front of 1862 Kalorama Road. In examining the contents of the trash can, the officers found six newspapers: two copies of the Baltimore American, two copies of the Washington Post and two copies of the New York Daily News, and in addition a brown paper bag containing an Armstrong Daily newspaper dated July 17, 1973, with the

results of the horse races and the amount of money paid on each bet. At the top of the Armstrong paper was the "number" for July 17, 1973.

Both Santilli and appellant had previous records for gambling violations. Telephone company records revealed only two telephones in operation at 1844 Kalorama Road, N.W. One was listed to the building's resident manager, who had no criminal record and who was away from his apartment in the afternoon. The other telephone, the 234–8476 number, was listed to Apartment 9 in the name of one S. Corbin, who was a chef at a cafe which was known for gambling activity. All of this information was a part of the affidavit presented to Judge Daly along with the request for authorization for a pen register. Appellant challenges it as being insufficient to establish probable cause. We disagree.

In the context of search warrants, probable cause is deemed to exist when the facts and circumstances of which the affiant has knowledge or reasonably trustworthy information are sufficient to satisfy the mind of a reasonably prudent and cautious man that a crime is probably being committed at the place designated. *Lerner v. United States*, D.C.Mun.App., 151 A.2d 184 (1959).[3] In view of the information supplied by the informer, and the personal observations of the police officers, we have no trouble concluding that, assuming, without deciding, that probable cause is required, it is present here.

## II.

Appellant further contends that the prosecution of gambling cases in the District of Columbia is selective and discriminatory. He alleges that there are no prosecutions for possessing so-called "legal" lottery tickets, such as those sold by Maryland. For this reason, he contends that his conviction cannot stand. We disagree.

Deprivation of equal protection must be found in the actual existence of invidious discrimination, and not in the possibility that similar cases will be treated differently. It is insufficient to simply show that the enforcement of the law is lax or even that other offenders may go free. *Washington v. United States*, 130 U.S.App. D.C. 374, 401 F.2d 915 (1968). Moreover, the conscious exercise of some selectivity of enforcement is not, in itself, a federal constitutional violation. *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The burden upon defendants to prove discriminatory enforcement of a valid statute is a heavy one. There must be at least a *prima facie* showing that (1) while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against the defendant, he alone has been singled out for prosecution; and (2) that the discriminatory prosecution is based on such impermissible considerations as race, religion, or other arbitrary classification. *United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974); *see also Oyler v. Boles, supra.* Appellant has not met this burden. He does not allege a difference in treatment based upon a constitutionally suspect standard. He does no more than allege a failure to prosecute others. Such a conclusory allegation, without more, is insufficient.

## III.

Finally, appellant contends that he was denied his Sixth Amendment right to compulsory process when the trial court quashed three subpoenas which had been served by Mr. Davis on the Attorney General of the United States, the Acting Chief of the Metropolitan Police Department, and the Director of the Maryland Lottery. Appellant wanted these individuals to testify

---

**3.** A pen register order based on the affidavit of two police officers is sufficiently analogous to a search warrant to permit us to temporarily utilize its standards. Further, the affidavit satisfied the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) for disclosure of both the circumstances in which the informer secured his information and the circumstances supporting his credibility.

as to the operation of lotteries in general, the extent of their existence in the District of Columbia, and the efforts of the government to regulate them. It is apparent that appellant intended to use this testimony to support his claim of selective enforcement.

The right of an accused to have compulsory process for obtaining witnesses in his favor is undisputed; nevertheless, there are limitations on that right. The Supreme Court delineated those limitations in holding that an accused was denied his right to compulsory process where the "State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Washington v. Texas*, 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967) (footnote omitted). Here, appellant can show neither (1) that the witnesses could testify as to events of which they had personal knowledge, or (2) that their testimony was relevant and material to the defense. There is no indication that the Attorney General of the United States had any knowledge of the facts of this case, or that he participated in the setting of policies for the enforcement of gambling laws in the District of Columbia. Thus, his testimony could in no way be relevant to the issues at hand. Similarly, appellant makes no showing or claim that the Acting Chief of Police was personally aware of his case. In fact, appellant had access to the testimony of the police inspector directly responsible for gambling investigations in the District of Columbia. Inspector Robert L. Dollard was the Director of the Morals Division of the Metropolitan Police Department, and was available for questioning at the motions hearing. Nor, since we find no showing of selective enforcement, can the director of the State of Maryland Lottery Agency contribute relevant testimony. Common sense seems to suggest that administrative heads or members of Cabinet should not be called to testify personally unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it. *Wirtz v. Local 30, International Union of Operating Engineers*, 34 F.R.D. 13 (D.C.1963). There having been no such showing here, we conclude that the trial court properly quashed subpoenas to those three officials. *See United States v. Boyle*, 338 F.Supp. 1025, 1028 (D.D.C.1972).

We have carefully examined appellant's other contentions and conclude that they are without merit. Accordingly, the judgment appealed from is

*Affirmed.*