Michael E. BARDOFF, Appellant,

v.

UNITED STATES, Appellee.

Michael S. KREIS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 88–CM–17, 88–CM–32.

District of Columbia Court of Appeals.

Argued Feb. 25, 1991.
Decided July 1, 1993.

Nina Kraut, Washington, DC, for appellants.

Sydney J. Hoffmann, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., at the time the brief was filed, John R. Fisher, Roy W. McLeese, III, and Kenneth Kohl, Asst. U.S. Attys., Washington, DC, were on the brief, for appellees.

Claire M. Sylvia, with whom Michael Davidson, Ken U. Benjamin, Jr., and Morgan J. Frankel, Washington, DC, were on the brief for amici curiae, U.S. Senators Daniel K. Inouye and Paul S. Sarbanes.

Before STEADMAN, SCHWELB and WAGNER, Associate Judges.

WAGNER, Associate Judge:

These consolidated appeals arise from appellants' convictions following a jury trial for violations of D.C.Code § 9–112(b)(4) (1989) (disruptive conduct on United States Capitol grounds) and D.C.Code § 9–112(b)(7) (1989) (demonstrating within a United States Capitol building). The appellants, Michael Bardoff and Michael Kreis, raise identical issues on appeal: (1) whether the trial court erred in quashing subpoenas for two United States Senators and an official of the United States House of Representatives based on a privilege under the Speech or Debate Clause of the Constitution, art. I, § 6, cl. 1; and (2) whether the trial court erred in denying post-trial motions to dismiss one of the two counts on the ground that the two statutory provisions constitute the same offense within the meaning of the Double Jeopardy Clause. U.S. Const. amend. V. We affirm the judgments of conviction.

## I.

On July 9, 1987, appellants went to the United States Russell Senate Office Building to attend a joint hearing before the U.S. Senate's Select Committee on Secret Military Assistance to Iran and the Nicaraguan Opposition and the U.S. House of Representatives' Select Committee to Investigate Covert Arms Transactions with Iran which was being chaired by Senator Daniel Inouye that day.[1] Appellants, who lined up at 5:00 a.m. in order to gain admittance to the hearings, planned to hold up a large banner during the testimony of Lieutenant Colonel Oliver North, a presidential aide.[2] The sign read, "Ask about cocaine smuggling."[3] According to appellants, they hoped their actions would prompt

questioning by the joint Congressional Committee members which would bring to the attention of the public the alleged illegal financing of arms to the Contras. Appellants knew they were risking arrest by bringing the banner into the hearing room.

Officer Jeroy Howard of the U.S. Capitol Police testified that he was assigned to duty in the hearing room that day. According to Officer Howard, because of threats on Col. North's life, he was instructed to "keep a watch" on anything unusual. Howard testified that another officer mentioned specifically that he should keep an eye on Kreis. Officer Howard testified that during Col. North's statement, he was standing about five feet from where the appellants were seated and that he observed appellant Bardoff stand and display the sign. Howard also said he heard Bardoff yell out something about cocaine smuggling when he stood up. According to the officer, he rushed toward Bardoff and pulled the sign out of his hand. Howard's supervisor told him to take appellants out of the room. Officer Howard said that as he did so, Bardoff's yelling was loud enough to interrupt the hearing and divert the attention of people in the room to Bardoff.

When appellants stood up and displayed the sign, another U.S. Capitol police officer, John Kurtz, was also on duty in the back of the hearing room behind appellants. Kurtz testified that he heard appellant Bardoff screaming loudly about cocaine smuggling before Officer Howard reached Bardoff. Kurtz said he had instructions not to do anything when appellants stood up until the chairman of the committee struck the gavel. Kurtz could not recall whether the gavel hit before he assisted Officer How-

1. The joint hearings were sometimes referred to as the "Iran–Contra" hearings. The Committees' investigation involved allegations that the U.S. Government was engaged in illegal arms deals to help supply the Nicaraguan Contras.

2. Because of the limited seating space and the demand for seating, only fifteen to twenty persons from the public were admitted into the back section of the hearing room every half-hour.

3. The banner was in two pieces which formed the question when held together. Around the same time as the Iran–Contra hearings, Senator John Kerry, Chairman of the Senate Subcommittee on Terrorism, Narcotics and International Operations of the Senate Committee on Foreign Relations, was conducting an investigation of drug trafficking, law enforcement and foreign policy, which focused on allegations of a connection between drug trafficking and aid to the Contras.

ard in removing appellants from the room. Officer Kurtz remembered that it was appellant Bardoff's screaming which first attracted his attention, although he could not recall hearing Kreis speak. Officer Kurtz testified that he never saw Bardoff stand quietly and hold the banner. Both Kurtz and Howard testified that if appellants had stood quietly or simply had worn shirts or buttons with a message, they would have asked only that appellants be seated. Officer Kurtz said that Bardoff resisted the officers by kicking, hitting, and biting them. A videotape was introduced by the government containing a portion of the C–Span network's broadcast of the events, which Kurtz identified at trial.[4]

Defense evidence showed that appellants entered the Senate Caucus Room about 10:30 a.m. with other members of the public. Both appellants testified that they "smuggled" the banner into the room because they did not expect to be allowed to bring it in. Bardoff testified that he knew there was a good chance that displaying the banner would cause a disruption in the proceedings. After listening to Col. North's testimony for about fifteen minutes, and recognizing that their group would be rotated out of the hearing room soon, Kreis pulled out the banner, handed one half to Bardoff, and proceeded to unfold his half. As Bardoff tried unsuccessfully to open his half, a policeman moved in and grabbed Bardoff's part of the banner within a second or two after he stood up. Appellant Kreis, who had his attention focused on the front of the room where North was testifying, said he heard the sound of chairs moving and realized they were not going to be allowed to demonstrate peacefully as they intended. According to Kreis, he then said, in what he characterized as a very direct, in-control, conversational tone, "Col. North, how many tons of cocaine passed through your friend John Hall's Costa Rica ranch into the U.S. since 1984?" Bardoff joined in, asking, "Why don't you ask about the cocaine smuggling?" and "Why don't you ask about the cocaine that's being shipped into U.S. Air Force base [sic]?"[5] As police forcibly escorted Bardoff from the hearing room, he shouted similar questions. According to Bardoff, the Committee members reacted calmly, and Senator Inouye hit the gavel and recessed the hearing for ten minutes.

Appellants filed subpoenas for Senators Daniel Inouye, Paul Sarbanes, and John Kerry[6] as well as for House and Senate Committee Chief Counsel, John Nields and Arthur Liman, Col. North, various Senate and House Congressional staffers who were on the dais behind the Congressional Members and the Custodian of Documents of the Senate Foreign Relations Committee.[7] The Senators moved to quash the subpoenas on the grounds that the Speech or Debate Clause of the Constitution barred inquiry into their legislative activities and that they should not be compelled to testify as eyewitnesses unless there was a showing of necessity. At the hearing on the motion, counsel for Kreis argued that they needed the testimony of Senator Inouye to establish his reason for recessing

4. The proceedings were widely covered by the media, and much of the incident was videotaped. Appellant Bardoff admitted at trial that the questions posed by Kreis were loud enough to be picked up clearly on the microphone in front of Oliver North, whose testimony was heard on the video along with Bardoff's voice.

5. Bardoff maintained, however, that he had not said anything before Officer Howard grabbed his half of the banner from him.

6. Appellants withdrew the subpoena of Senator Kerry since he was not a member of the Select Committee and was not present in the hearing room that day.

7. During trial, appellants issued subpoenas directed to: (1) "Fein [sic], Lawyer to Senate," requiring her to provide names of all staff members, and another to "Counsel to Senate, Fine," directing her to bring the names and addresses of all staff members who were at the hearing; (2) "Ilva Timpke, Custodian of Documents, Foreign Relations Committee," directing her to bring documents related to the import of drugs into the United States by government officials; (3) Diane Olbaum, a member of Senator Sarbane's staff; and (4) "various Jane and John Does" who served as staff members of several named Senators. The subpoenas were served in appellant Bardoff's name, but appellant Kreis' counsel informed the court that the subpoenas were served on behalf of Kreis as well.

the hearings in order to show that appellants' conduct was not responsible for the recess and that alternative actions were available to the Committee Chairman. Appellants also contended that everyone subpoenaed, including the Senators, would be fact witnesses. Appellants assumed that the position of these individuals on the dais would have placed them in a position to observe, and therefore to testify, that appellants' conduct did not disrupt the proceedings. Appellants made no proffer that any of the potential witnesses actually would so testify. Appellants represented that if Col. North, who had his back to the audience, were called, they could ask him why he flinched, a movement reflected in a portion of the videotape which was introduced in evidence.

Counsel for the Senators argued at a pretrial motions hearing that there were other witnesses to the event, including those in the audience, who could provide evidence similar to that which appellants were seeking from the Senators, and therefore, their testimony could not be compelled. Counsel for Senator Inouye argued that any decision on the part of the Senator as Chairman of the Committee was made pursuant to his legislative responsibilities, and thus fell within the protection of the Speech or Debate Clause.

The trial court granted the Senators' motions to quash on the grounds that the testimony sought concerned matters protected by the Speech or Debate Clause of the Constitution. The court also quashed the subpoenas for the Senators because appellants had failed to proffer any reason

why others present who did not hold such high office could not provide the testimony. For these same reasons, the trial court also granted House Select Committee Counsel John Nields' motion to quash. Col. Oliver North's motion to quash was granted on several grounds, including that: (1) the videotape of events was the best evidence of what transpired, particularly considering that North's back was to the action; and (2) the testimony sought from North was irrelevant because the issue was not whether the testimony was interrupted, but rather whether the proceedings were disrupted. The trial court also found that the other subpoenas had not been served properly.

## II.

Appellants argue that the trial court erred in granting the motions to quash the subpoenas for Senators Inouye and Sarbanes and the chief counsel because the Speech or Debate Clause does not provide immunity from testifying at criminal trials about factual matters which do not implicate legislative actions.[8] They contend that the court's erroneous ruling deprived them of fundamental rights under the Fifth and Sixth Amendments and forced them to waive their right to remain silent in order to present a defense. We find no reversible error in the trial court's ruling.

Although on appeal appellants advance as the principal reason for the inapplicability of the Speech or Debate Clause that the individuals they subpoenaed were sought as fact witnesses, the record shows that their principal arguments before the trial

**8.** Appellants direct their arguments on appeal exclusively to the ruling on the motions to quash filed on behalf of Senators Inouye and Sarbanes and Chief Counsel Nields. In their joint brief, appellants express disagreement with the trial court's ruling with respect to others, including Col. North; however, they state only generally that the others were subpoenaed to provide relevant testimony. Appellants provide no supporting argument in their brief for this general assertion; therefore, we consider them to be abandoned. *See* D.C.App.R. 28(a)(5) (briefs to contain "contentions of the appellant with respect to the issues presented, and the reasons therefor, with citation to the authorities, statutes and parts of the record relied on"); *see*

*also Cratty v. United States,* 82 U.S.App.D.C. 236, 243, 163 F.2d 844, 851 (1947) (questions raised but not argued in briefing are treated as abandoned). We note that the trial court also gave as a reason for quashing the subpoena for Col. North that his testimony would have been cumulative. The court quashed other subpoenas for Susan Fine, Assistant Senate Legal Counsel, and Ilva Timke, who was actually a federal employee detailed to the Senate Foreign Relations Committee, for lack of proper service. Absent compliance with D.C.App.R. 28(a)(5), appellants have failed to show the reasons that the court erred in these rulings. It is appellant's burden to demonstrate error. *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

court were that they wanted to question the Senators about the rationale for calling a recess of the hearing and the availability of alternative courses of action. Counsel for the Senators argue on appeal, as they did before the trial court, that there were many others present in the audience who could have provided the evidence which appellants sought. Further, they argued, the Committee Chairman's decision to call a recess was made pursuant to his legislative responsibilities, and therefore fell within the Speech or Debate Clause. In addressing these arguments, the trial court based its ruling that the testimony could not be compelled on two grounds: (1) that in recessing the hearing, the Senators were engaged in a legislative function which was covered under the Speech or Debate Clause; and (2) that as high government officials, the Senators should not be required to testify. For the same reasons, the court granted the motion to quash filed on behalf of John Nields.

■ We agree with the trial court that to the extent that appellants sought to subpoena the Senators and Chief Counsel Nields to question them concerning the conduct of the hearing, including the decision to adjourn, the subject falls within the area of legislative activity protected from being "questioned in any other place" by the Speech or Debate Clause.[9] The purposes of the Clause are to insure the independence of Congress in the exercise of its legislative functions and to reinforce the separation of powers established in the Constitution. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 502–03, 95 S.Ct. 1813, 1820–21, 44 L.Ed.2d 324 (1975). The Supreme Court has read the Clause broadly to effectuate its purposes. *Id.; United States v. Swindall,* 971 F.2d 1531, 1534 (11th Cir.1992). The Clause protects only " 'purely legislative activities,' " including those inherent in the legislative

process. *Chastain v. Sundquist,* 266 U.S.App.D.C. 61, 64, 833 F.2d 311, 314 (1987) (quoting *United States v. Brewster,* 408 U.S. 501, 512, 92 S.Ct. 2531, 2537, 33 L.Ed.2d 507 (1972)), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 946 (1988). It will not shield the legislator even for official action, unless legislative in nature. *Chastain,* 266 U.S.App.D.C. at 64, 833 F.2d at 314. Actions protected under the Speech or Debate Clause include those in the regular course of the legislative process and the motivations of the legislators for their actions. *United States v. Helstoski,* 442 U.S. 477, 489, 99 S.Ct. 2432, 2439, 61 L.Ed.2d 12 (1979). However, the privilege extends not only to pure debate or speeches on the floor of Congress, but also to participation in committee investigations, proceedings, reports, and other activities integral to lawmaking. *Walker v. Jones,* 236 U.S.App.D.C. 92, 98, 733 F.2d 923, 929, *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

■ Essentially, whether the activity is legislative within the meaning of the Clause depends on: (1) whether it is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings," and (2) whether the activity relates "to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). Where the acts are legislative in nature, the Supreme Court has held that the legislator will be protected from criminal prosecutions based thereon, *Brewster, supra,* and from being compelled to provide testimony about legislative acts. *Gravel,* 408 U.S. at 616, 92 S.Ct. at 2622; *Swindall, supra,* 971 F.2d at 1544.

9. U.S. Const. art. I, § 6, cl. 1. This clause provides:

The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

There is no dispute that the hearings at issue here were being conducted to gather information with the view toward recommending legislation. These facts place beyond debate that the Senators were engaged in legitimate legislative activities at all times pertinent to the proceeding during which appellants were arrested. *See Gravel,* 408 U.S. at 625, 92 S.Ct. at 2627. That the action took place while the Committee was in session in relationship to the business before it is significant in determining whether the actions come within the protected sphere. *See Eastland, supra,* 421 U.S. at 503, 95 S.Ct. at 1821. When he recessed the hearing, Chairman Inouye acted pursuant to the power provided for by Senate Rules.[10] Under the circumstances, the chairman's decision to recess the hearing and his motives for doing so clearly fall within the zone of legislative activities protected under the Speech or Debate Clause. The degree to which the enforcement of the subpoena would burden the activity makes no difference. *See Eastland,* 421 U.S. at 503, 95 S.Ct. at 1821; *see also MINPECO v. Conticommodity Serv., Inc.,* 269 U.S.App.D.C. 238, 241–42, 844 F.2d 856, 859–60 (1988). "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Eastland,* 421 U.S. at 503, 95 S.Ct. at 1821. Accordingly, we conclude that the trial court properly ruled that the Clause bars questioning the Senators about recessing the hearing.

Appellants also argue that the trial court erred in quashing subpoenas for Senators Inouye and Sarbanes and for John Nields because their testimony was material, relevant and not cumulative. The government counters that the trial court did not abuse its discretion in its ruling because: (1) the testimony of the witnesses subpoenaed was not necessary to the defense case; and (2) there was sufficient evidence available from other sources which was either introduced at trial (including a videotape) or which could have been presented from some of the many other individuals present at the hearing. In the brief of *amici,* the subpoenaed parties argue that the trial court followed well-established public policy to the effect that a high official's testimony should not be compelled if it would be merely cumulative.

▪ The right to compulsory process "does not by its terms grant a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor.*'" *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (quoting U.S. Const., amend. VI); *see also Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967). Mere deprivation of a witness's testimony is not a violation of the Compulsory Process Clause, which requires "some showing that the evidence lost would be both material and favorable to the defense." *Valenzuela–Bernal,* 458 U.S. at 867, 873, 102 S.Ct. at 3446, 3449; *see also Washington v. Texas,* 388 U.S. at 23, 87 S.Ct. at 1925; *cf. Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987); *United States v. Davis,* 297 U.S.App.D.C. 396, 400, 974 F.2d 182, 186 (1992).

"That the Sixth Amendment does not guarantee criminal defendants the right to compel the attendance of any and all witnesses is reflected in [Fed.R.Crim.P. 17(b) which] requires the Government to subpoena witnesses on behalf of indigent defendants, but only 'upon a satisfactory showing … that the presence of the witness is necessary to an adequate defense.'" *Valenzuela–Bernal, supra,* 458 U.S. at 867 n. 7, 102 S.Ct. at 3446 n. 7 (citations omitted). A defendant must give "some explanation of how [the] testimony would have been favorable and material[,]" *id.* at 872, 102 S.Ct. at 3449, and "in ways not merely

---

**10.** Rule 26.5(d) of the Standing Rules of the Senate, then in effect, provided that "[w]henever disorder arises during a committee meeting that is open to the public, or any demonstration of approval or disapproval is indulged in by any person in attendance at any such meeting, it shall be the duty of the Chair to enforce order on his own initiative …" Rule 26.5(d), reprinted in S.Doc. No. 25, 101st Cong., 2nd Session 37 (1990).

cumulative to the testimony of available witnesses." *Id.* at 873, 102 S.Ct. at 3449. In *Davis v. United States*, 390 A.2d 976, 981 (D.C.1978), we held that high government officials should not be called to testify personally unless "a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it." In *Whittlesey v. United States*, 221 A.2d 86, 89-90 (D.C. 1966), we affirmed the trial court's refusal to issue subpoenas for four Presidential Assistants because appellant's assertion that the testimony would be exculpatory was speculative.

 Here, appellants were unable to demonstrate satisfactorily how the subpoenaed testimony would be more than cumulative of other evidence, or why others in the hearing room that day, who did not hold such high office as those subpoenaed, could not testify to the same events. There is nothing in the record indicating that the missing testimony was necessary to an adequate defense, or would have been either favorable, material or exculpatory.[11] Under such circumstances, the trial court properly may refuse to compel the testimony of a witness subpoenaed by a defendant in a criminal case. *Valenzuela–Bernal, supra*, 458 U.S. at 867 n. 7, 102 S.Ct. at 3446 n. 7; *Hemmati v. United States*, 564

A.2d 739, 745–46 (D.C.1989); *Davis, supra*, 390 A.2d at 781; *Whittlesey, supra*, 221 A.2d at 89–90. The record makes it clear that any hope they had for favorable testimony from the subpoenaed witnesses was purely speculative. *See Whittlesey*, 221 A.2d at 89–90.[12] We find no error in the trial court's ruling, which gave appropriate consideration to the relevant factors.

### III.

 Finally, appellants argue that D.C.Code § 9–112(b)(7),[13] is a lesser included offense of the disorderly conduct charge, D.C.Code § 9–112(b)(4);[14] therefore, one of the convictions must be vacated. We disagree.

"The Fifth Amendment guarantee against double jeopardy precludes multiple punishments for one offense." *Bennett v. United States*, 620 A.2d 1342, 1344 (D.C. 1993) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). "[I]n order to determine whether or not two offenses merge into one offense, and thereby trigger double jeopardy protection, the court must determine 'whether each provision requires proof of an additional fact which the other does not.'" *Bennett*, 620 A.2d at 1344 (quoting *Blockburger v. United States*, 284

11. Essentially, appellants sought to show that their act of holding up the banner did not cause the hearing to be disrupted. Appellants' own testimony severely undermines their contentions, however. They testified that while they planned a silent petition, were they not allowed to hold up their banner peacefully, they would speak out the question posed on their banner. And they did. Appellants testified that they fully expected to be prevented from bringing the banner into the hearing room and from holding it up without interference, and they anticipated being arrested.

12. We also reject appellants' assertion that their Fifth Amendment rights to remain silent and not testify were violated by the trial court's order quashing the subpoenas, forcing them to defend themselves by taking the stand. "The Fifth Amendment simply is not implicated when a defendant feels pressured to take the stand in order to rebut the evidence cumulated against him." *United States v. (Glenn) Wright*, 251 U.S.App.D.C. 276, 281, 783 F.2d 1091, 1096 (1986) (citations omitted).

13. D.C.Code § 9–112(b)(7) reads:

(b) It shall be unlawful for any person or group of persons willfully and knowingly:

. . . .

(7) To parade demonstrate, or picket within any of the Capitol buildings.

14. D.C.Code § 9–112(b)(4) reads:

(b) It shall be unlawful for any person or group of persons willfully and knowingly:

. . . .

(4) To utter loud, threatening, or abusive language, or to engage in any disorderly or disruptive conduct, at any place upon the United States Capitol Grounds or within any of the Capitol Buildings with intent to impede, disrupt; or disturb the orderly conduct of any session of the Congress or either House thereof, or the orderly conduct within any such building of any hearing before, or any deliberations of, any committee or subcommittee of the Congress or either House thereof.

U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)).

Appellants' principal argument is that because the facts needed to prove the elements of the demonstration charge were the same as those used to prove disorderly conduct, the charges merged. Our case law is to the contrary. In *Byrd v. United States,* 598 A.2d 386, 390 (D.C.1991) (en banc), this court held that "the focus [must be] on the statutory elements of the two distinct charges; *viz.,* whether each statutory provision required proof of an element that the other did not." *See also Monroe v. United States,* 600 A.2d 98, 99 (D.C. 1991) (factual analysis approach to merger issue no longer good law).

An examination of the statutory elements makes clear that D.C.Code §§ 9–112(b)(4) and 9–112(b)(7) are not the same offenses within the meaning of the Double Jeopardy Clause because each provision requires proof of a number of facts which the other does not. Section 9–112(b)(4) requires proof that the defendant either uttered loud, threatening, or abusive language or engaged in disorderly or disruptive conduct, while § 9–112(b)(7) does not; section 9–112(b)(4) requires intent to disrupt a Congressional session, hearing, or deliberation, while § 9–112(b)(7) does not; section 9–112(b)(7) requires proof that the defendant paraded, demonstrated, or picketed, while § 9–112(b)(4) does not; section 9–112(b)(7) requires proof that the prohibited conduct occurred within the Capitol Building, while § 9–112(b)(4) does not. Because each section requires proof of facts the other does not, they are separate offenses under the *Blockburger* principles. *See Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. at 182.

For the foregoing reasons, the judgments of conviction appealed from hereby are

*Affirmed.*