**4**

UNITED TRANSPORTATION
UNION, Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
CO., Defendant.

SPRINGFIELD TERMINAL
RAILWAY CO., Plaintiff,

v.

UNITED TRANSPORTATION
UNION, Defendant.

Civ. Nos. 87-0342-P, 88-0117-P.

United States District Court,
D. Maine.

July 24, 1990.

Craig J. Rancourt, Biddeford, Me., Clinton J. Miller, III, Asst. General Counsel, United Transp. Union, Cleveland, Ohio, for United Transportation Union.

Charles S. Einsiedler, Jr., Pierce Atwood Scribner, Ernest J. Babcock, Friedman & Babcock, Portland, Me., John H. Broadley, Jenner & Block, Washington, D.C., for Springfield Terminal Ry. Co.

Michael Davidson, Senate Legal Counsel, Morgan J. Frankel, Asst. Senate Legal Counsel, Washington, D.C., for Senator Mitchell's Office.

Herbert E. Forrest, Federal Programs Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for Nat. Mediation Bd.

MEMORANDUM AND ORDER ON
SPRINGFIELD TERMINAL'S
MOTION TO COMPEL

GENE CARTER, Chief Judge.

In this action Springfield Terminal Railway Company seeks to set aside an arbitration award in favor of Defendant United

Transportation Union concerning a strike by Union members against Springfield Terminal over alleged safety issues. Springfield Terminal alleges that the procedures of the National Mediation Board (NMB) denied it due process, that the arbitration was biased, and that the process was corrupted by improper contacts by the NMB and other political factions with the arbitrator before the time of the award.

Springfield Terminal has conducted sweeping discovery in this case, including depositions from and document production by assistants to United States Senator John Kerry and United States Congressman Joseph Brennan. The discovery from those members of Congress and their aides was the subject of a claim of privilege under article 1, section 6 of the United States Constitution, the Speech or Debate Clause, resolved by this Court in its orders of March 15, 1989, and May 2, 1989.

Springfield Terminal has also sought discovery from the office of United States Senator George Mitchell and from his legislative assistant, Robert J. Carolla. A large number of documents were produced and Mr. Carolla was deposed. Senator Mitchell's office has withheld one group of documents claiming they are privileged under the Speech or Debate Clause and another group on the grounds that they are irrelevant to this action. Springfield Terminal's motion to compel production of those documents is now before the Court. Mr. Carolla also refused to answer a series of questions at his deposition, and Springfield Terminal's motion to compel his answers is also before the Court.

*Speech or Debate Clause*

The Speech or Debate Clause provides that "[F]or any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place."[1] The clause has been broadly construed, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501, 510, 95 S.Ct. 1813, 1820, 1824–25, 44 L.Ed.2d 324 (1975), but

the Supreme Court has made clear that protection should not be broader than is necessary to fulfill the purposes of the clause. *United States v. Brewster*, 408 U.S. 501, 517, 92 S.Ct. 2531, 2540, 33 L.Ed.2d 507 (1972). The Supreme Court has described the central purpose of the clause as protection of legislative independence within the "legitimate legislative sphere." *Eastland*, 421 U.S. at 502, 503, 95 S.Ct. at 1820, 1821. In civil cases the clause prevents the litigation from distracting members of Congress and their aides, forcing them to divert their time and attention from their legislative tasks, and from delaying and disrupting the legislative function. *Id.* at 503, 95 S.Ct. at 1821.

Of course, not all acts of legislators are within the legitimate legislative sphere. The privilege extends beyond pure speech and debate " 'only when necessary to prevent indirect impairment of [Congressional] deliberations.' " *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). To qualify for the privilege, an activity other than actual speech or debate must meet a two part test. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir.1983). It must be "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Id.* (quoting *Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627). The activity also must address proposed legislation or some other subject within Congress's constitutional jurisdiction. *Id.* (citing *Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627.

The subpoena issued to Senator Mitchell's office seeks all documents which embody, refer to, relate to, or summarize (1) political activities; (2) constituent services; (3) communications to or from constituents; (4) communications to or from labor organizations; or (5) attempts to influence the action of any agency and which relate to the 1986 strike and the leases by B & M, MEC, and D & H of their rail lines to Springfield Terminal. The first category

---

**1.** The Court notes at the outset that the Speech or Debate Clause, when applicable, protects not only legislators but also their aides from questioning in any other place. *Gravel v. United States* 408 U.S. 606, 616–19, 92 S.Ct. 2614, 2622–24, 33 L.Ed.2d 583 (1972).

of documents that remains in dispute consists of internal congressional memoranda and drafts of documents which relate in any way to congressional efforts to influence certain federal agencies on behalf of the UTU. Springfield argues that internal congressional communications and materials are not privileged if they relate to unprivileged activities. Senator Mitchell's office argues, on the other hand, that internal communications are absolutely privileged because they are among the things "generally done in a session of the [Senate] by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1881), that is, they are integral parts of the communicative processes by which Members participate in Senate proceedings.

In order to be effective at their legislative tasks, legislators must be able to confer among themselves and with their assistants. Just as they must be able to obtain information pertinent to potential legislation, *see United Transportation Union v. Springfield Terminal Railway Company*, Nos. 87–0342 P, 88–0117 P, 1989 WL 38131 (D.Me. March 15, 1989); *Miller v. Transamerican Press, Inc.*, 709 F.2d at 530, they must be able to discuss and analyze issues that are subjects of pending or potential legislation in order to plan for and work on that legislation. Internal congressional communication, whether between legislators or between legislators and their aides, is plainly "an integral part of the ... communicative processes by which Members participate in House proceedings." *Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627. It thus meets part one of the legislative-act test. *See Miller v. Transamerican Press, Inc.*, 709 F.2d at 529 (9th Cir.1983) (holding that insertion of material directly into the Congressional Record meets part one of the test "because of the Record's role in the intra-Congressional communicative process").

The Court finds that the intra-Congressional communications sought here also meet the second part of the test. The subjects of the documents sought, the railroad strike and the railroad leases, are plainly areas of potential legislation within Congress's constitutional jurisdiction.

The Court declines Springfield Terminal's invitation to characterize the type of activity for which it seeks discovery more narrowly to preclude protection under the Speech or Debate Clause. Springfield Terminal argues that it seeks discovery on activities, whether political activities or constituent services, which are not protected under the Speech or Debate Clause. This argument ignores the fact that discussion of those activities is embedded in media, internal memoranda and discussions, that are traditionally an integral part of the legislative process. Although the internal communications may discuss unprotected activities, their purpose may well be legislative in whole or in part. The purpose of the clause would be ill-served if legislators and their staffs had to search through their internal correspondence, memoranda, notes and collective memories to determine whether a given document had a legislative, non-legislative, or mixed purpose. Much valuable time, energy, and attention would be diverted from important legislative tasks. *See Eastland* 421 U.S. at 503, 95 S.Ct. at 1821. As the Supreme Court has specifically stated, "the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process *and into the motivation for those acts.*" *United States v. Brewster*, 408 U.S. at 525, 92 S.Ct. at 2544 (emphasis added); *see also Springfield Terminal*, Order of March 15, 1989, (refusing to examine proffered legislative activities closely to determine whether they are protected in specific detail).

In *Minpeco, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856 (D.C.Cir.1988), the court addressed a claim of privilege under the Speech or Debate Clause made in response to subpoenas requesting, *inter alia*, correspondence and communications between Congressional committees regarding a sworn statement given to a House subcommittee and allegedly illegally altered by the committee staff before publication. The court acknowledged that the documents requested "might arguably contain material unrelated to the subcommit-

tee's protected investigatory activities." *Id.* at 862. Finding that "the subpoenas were issued in pursuit of an impermissible objective, namely, an inquiry into the manner in which the subcommittee had conducted its constitutionally protected legislative responsibilities," *id.*, the Court went on to state another rationale for refusing to compel production that seems appropriate here:

> [E]ven though the language of the subpoenas is broad enough to encompass documents that do not relate to the Hunts' stated objective, the effect of their literal enforcement would be to authorize a fishing expedition into congressional files. For a court to authorize such open-ended discovery in the face of a claim of privilege and in the absence of any information to suggest the likely existence of nonprivileged information would appear inconsistent with the comity that should exist among the separate branches of the federal government. Such action would also be inconsistent with Supreme Court decisions that "make clear that the Speech or Debate Clause, designed to preserve the independence and integrity of the Legislative Branch, [is to be] 'read broadly to effectuate its purposes.' "

*Id.* at 862–63 (citations omitted).

Here Springfield Terminal can and will have [2] access to any external documents from Senator Mitchell's office relating to political and constituent activities and attempts to influence agencies concerning the subjects recited in the subpoenas. Those are the documents that are important for Springfield Terminal's case. What happened within the Congress prior to or after issuance of the external documents is likely to be duplicative or irrelevant since the gravamen of Springfield Terminal's complaint concerns direct or indirect Congressional pressure on the arbitrator, which is necessarily an extra-Congressional

act. The slight possibility that the internal documents sought might provide leads to other external documents not already produced during the two years of discovery in this case is not enough to warrant the significant entrenchment on legislative independence that would be effected if this motion to compel internal Congressional communications were granted.[3]

The reasoning set forth above applies equally to the production of internal Congressional communications, the giving of testimony concerning such communications, and internal drafts of unprivileged documents.

*Relevance*

■ Senator Mitchell's office also objects to production of certain documents on the grounds that they are not relevant.[4] The Court reads the objection as pertaining to the request for documents relating to ICC proceedings in the period after the 1987 strike. At Mr. Carolla's deposition he stated that he had had communication with the ICC's director of the office of public assistance concerning claims to the ICC that might be affected by issues arising out of the 1987 strike. Carolla said that his "general understanding was that any claims that were affected by the November 1987 safety strike depended on the outcome of litigation involving that strike." Carolla's suggestion of at least a tenuous relationship between the ICC proceedings and the litigation concerning the 1987 strike meets the broad requirement of Fed R.Civ.P. 26 that discovery requested be reasonably calculated to lead to the discovery of admissible evidence. Given the gravamen of Springfield Terminal's complaint that there was improper influence exerted on the arbitrator, the date of Arbitrator Quinn's last decision, October 15, 1988, is the appropriate temporal limitation for such discovery.

---

**2.** Counsel for Senator Mitchell's office represents that over 1900 pages of material have been produced.

**3.** The Court finds no decisional significance in the fact that other members of Congress may have produced internal communications in re-

sponse to previous Springfield Terminal subpoenas.

**4.** The office also made a relevance objection to production of internal communications. There is no need to address that claim further.

Accordingly, it is ORDERED that Springfield Terminal's Motion to Compel Discovery as to internal Congressional communications be, and it is hereby, DENIED. It is FURTHER ORDERED that Springfield Terminal's Motion to Compel Discovery, be and it is hereby, GRANTED as it pertains to communications between the office of Senator Mitchell and the ICC in the period beginning November 12, 1987, and ending October 15, 1988.

SO ORDERED.