KAREN LECRAFT HENDERSON, Circuit Judge,
concurring in the judgment:
When all of the brush is cleared away, this case presents a simple question: can Executive Branch personnel — here, special agents of the Federal Bureau of Investigation — execute a search warrant directed to the congressional office of a Member of the Congress (Member) without doing violence to the Speech or Debate Clause (Clause) set forth in Article I, Section 6, Clause 1 of the United States Constitution? [1] The limited United States Supreme Court precedent regarding the applicability of the Clause in the criminal context makes one thing clear — the Clause “does not purport to confer a general exemption upon Members of Congress from liability or process in criminal cases. Quite the contrary is true.” Gravel v. United States, 408 U.S. 606, 626, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (emphasis added). It appears that neither the Supreme Court nor any inferior court has addressed the question as I view it and the single holding from our court on which the majority almost exclusively relies to answer the question in the negative decides only the Clause’s applicability to a civil subpoena obtained by private parties who sought certain files in the possession of a congressional subcommittee. See Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408 (D.C.Cir.1995) (Clause barred enforcement of subpoenas duces tecum issued to two members of House Subcommittee on Health and Environment); Maj. Op. at 659-61 (relying on Brown & Williamson because “[t]he Supreme Court has not spoken”).[2] But Brown & Williamson’s *667 brief comments regarding the Clause in the criminal context — which comments importantly acknowledge .the Clause’s less categorical scope in that context[3] — remain dicta no matter how “profound.” Maj. Op. at 661. I believe the question can be directly answered “yes” without resort to dicta or any other indirect support or theory. Accordingly, while I concur in the judgment which affirms the district court’s denial of Representative William J. Jefferson’s (Rep.Jefferson) Rule 41(g) motion, I do not agree with the majority’s reasoning and distance myself from much of its dicta.
The Supreme Court has made clear that the two elements of the privilege — “Speech or Debate” and “questioning]” — -must “be read broadly to effectuate its purposes.” United States v. Johnson, 383 U.S. 169, 180, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). As our court has noted, the “touchstone” of the Clause “is interference with legislative activities,” see Brown & Williamson, 62 F.3d at 421; the Clause is therefore “designed to protect Congressmen ‘not only from the consequences of litigation’s results but also from the burden of defending themselves’ ” for their legislative actions, Helstoski v. Meanor, 442 U.S. 500, 508, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (quoting Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); see also Johnson, 383 U.S. at 179, 86 S.Ct. 749 (Clause “protect[s] [the legislature] against possible prosecution by an unfriendly executive and conviction by a hostile judiciary”). Still, the “speech or debate privilege was designed to preserve legislative independence, not supremacy.” United States v. Brewster, 408 U.S. 501, 508, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) (emphasis added).
There is no dispute that the issuance of the search warrant for Rep. Jefferson’s congressional office does not violate the Clause. See Maj. Op. at 659. The “Speech or Debate” protected by the Constitution includes only “legitimate legislative activity,” see, e.g., Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and “[t]aking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act,” Brewster, 408 U.S. at 526, 92 S.Ct. 2531. Here, the warrant sought only “fruits, in-strumentalities and evidence of violations of’ various federal bribery and fraud statutes involving Rep. Jefferson,[4] see Warrant Aff., reprinted in Joint Appendix (JA) at 7; Sealed Appendix (SA) 18-25, which plainly are outside the bounds of protected legislative activities, see Brewster, 408 U.S. at 526, 92 S.Ct. 2531. Having found “probable cause to believe that” Rep. Jefferson’s congressional office “contains property constituting evidence of the commission of ... bribery of a public official, ... wire fraud[,] ... bribery of a foreign official ... [and] conspiracy to commit” these crimes and having issued a search warrant aimed solely at such evidence, see Warrant Aff. at JA 87-88 (internal citations omitted), the district court ensured that the warrant encompassed only unprivileged records. And it is, of course, the judiciary, not the executive or legislature, that delineates the scope of the privilege. See United States v. Nixon, 418 U.S. 683, 703-04, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (citing Speech or Debate Clause cases to illustrate judicial power to define scope of executive privilege); cf. In re Search of Rayburn House Ofice Bldg. Room No. 2113 (Rayburn), 432 F.Supp.2d 100, 116 *668 (D.D.C.2006) (“A federal judge is not a mere rubber stamp in the warrant process, but rather an independent and neutral official sworn to uphold and defend the Constitution.”)-
Notwithstanding the search warrant sought only unprivileged records, Rep. Jefferson’s congressional office, as the warrant itself manifests,[5] also contained records, paper and electronic, of legislative acts to which the Clause’s protection extends. Execution of the warrant necessarily required the FBI agents to separate unprivileged responsive records from privileged records of legislative acts. It is this aspect of the warrant’s execution that Rep. Jefferson claims violated the Clause because it constituted impermissible “questioning]” of him. See Appellant’s Br. at 13-22; U.S. Const. Art. I, § 6, cl. 1. I disagree.[6]
The execution of a valid search warrant is an “exercise of executive power,” United States v. Grubbs, 547 U.S. 90, 126 S.Ct. 1494, 1501, 164 L.Ed.2d 195 (2006) (internal quotation omitted), and, as noted, the Supreme Court has made clear that the Clause “does not purport to confer a general exemption upon Members of Congress” from criminal process, Gravel, 408 U.S. at 626, 92 S.Ct. 2614.[7] Nevertheless, my colleagues conclude that the holding in Brown & Williamson, see 62 F.3d at 418-21, establishes that “the disclosure of legis *669 lative material” during the execution of a search warrant, Maj. Op. at 660, amounts to prohibited “question[ing]” because the Clause embodies a broad “non-disclosure privilege,” Maj. Op. at 660, that safeguards the absolute confidentiality of legislative records even from criminal process. With respect, I believe they vastly over-read Brown & Williamson. That holding prohibited the production of certain records in a congressional subcommittee’s possession in response to a civil subpoena. See Brown & Williamson, 62 F.3d at 418-19 (citing MINPECO, S.A. v. Conticommodity Servs., Inc., 844 F.2d 856, 857-59 (D.C.Cir.1988)). It found no functional difference between compelling a Member to be “questioned” orally and compelling him to produce documents in response to a subpoena. See id. at 420-21.
Yet, as the district court noted, “the difference between a warrant and a subpoena is of critical importance here.” Rayburn, 432 F.Supp.2d at 111. Answering a civil subpoena requires the individual subpoenaed to affirmatively act; he either produces the testimony/documents sought or challenges the subpoena’s validity. In contrast, a search warrant requires that the individual whose property is to be searched do nothing affirmative. Instead, the search must first meet the requirements of the Fourth Amendment via the prior approval of “a neutral and detached magistrate,” Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and, upon that official’s finding of probable cause, the warrant “authorizes Government officers to seize evidence without requiring enforcement through the courts,” United States v. Miller, 425 U.S. 435, 446 n. 8, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). The property owner is not required to respond either orally or by physically producing the property, including records. Cf. Johnson v. United States, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913) (under Fifth Amendment “[a] party is privileged from producing the evidence, but not from its production”). The FBI agents’ execution of the warrant on Rep. Jefferson’s congressional office did not require the latter to do anything and accordingly falls far short of the “question[ing]” the court in Brown & Williamson found was required of a Member in response to a civil subpoena.
Moreover, as the majority recognizes, see Maj. Op. at 660, in Brown & Williamson we relied heavily on the Clause’s purpose — shielding the legislative process from disruption — in reading the Clause’s prohibition of “question[ing]” broadly to protect the “confidentiality,” see Brown & Williamson, 62 F.3d at 417-21, of records from the reach of a civil subpoena. Noting that the Speech or Debate “privilege is not designed to protect the reputations of congressmen but rather the functioning of Congress,” id. at 419, the court concluded that document production threatened to distract the two Members from their legislative duties, see id. at 418 (quoting MINPECO, 844 F.2d at 859). We declared that “[d]ocumentary evidence can certainly be as revealing as oral communications,” providing “clues as to what Congress is doing, or might be about to do,” id. at 420, and thereby potentially defeating the Clause’s purpose to “insulate Members of Congress from distractions that ‘divert their time, energy, and attention from their legislative tasks,’ ” id. at 421 (quoting MINPECO, 844 F.2d at 859 (quoting Eastland v. U.S. Servicemen’s Fund, 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975))). Given this purpose, we concluded that the Clause “permit[s] Congress to insist on the confidentiality of investigative files” and therefore barred enforcement of the subpoena. Id. at 420.
Brown & Williamson’s non-disclosure rule, however, does not extend to criminal process. Although the presence of FBI *670 agents executing a search warrant in a Member’s office necessarily disrupts his routine, the alternative procedure proposed by Rep. Jefferson — sealing the office and permitting him to first label his records (paper and electronic) as privileged and unprivileged — -would no doubt take much more of his time. Moreover, the FBI agents responsible for the search of Rep. Jefferson’s congressional office went to great lengths to minimize disruption [8] by, inter alia, executing the warrant when the Congress was not meeting, imaging computer hard drives rather than searching the computers, using specific search terms for both paper and electronic records and, most important, creating Filter Teams — one for paper records and one for electronic records — and ensuring subsequent in camera judicial review to minimize exposure to privileged records. See Warrant Aff. at JA 79-87. The Filter Teams consisted of FBI agents with no prior “role or connection to the investigation” of Rep. Jefferson and whose “roles in the investigation [were] confined to ... reviewing] the ... records seized from the Office to validate that they are responsive to the list” contained in the warrant. Id. at 81 (describing filtering procedures for paper records); id. at 84-85 (electronic records). By creating the Filter Teams and “[b]y requiring judicial approval before any arguably privileged documents could be shared with the prosecution team, the search procedures as a whole eliminated any realistic possibility that evidence of Rep. Jefferson’s legislative acts would be used against him.” Appellee’s Br. at 26.
Disruption aside, it is well settled that a Member is subject to criminal prosecution and process. See Brewster, 408 U.S. at 516, 92 S.Ct. 2531 (Clause’s “purpose [is not] to make Members of Congress super-citizens, immune from criminal responsibility”); Gravel, 408 U.S. at 626, 92 S.Ct. 2614.[9] The core activity protected by the Clause — speech in either chamber of the Congress — is a public act. In essence, therefore, what the Clause promotes is the Member’s ability to be open in debate— free from interference or restriction— rather than any secrecy right. That candor is the animating purpose of the Clause is plain from the historical roots of the privilege. In drafting the Speech or Debate Clause, the Framers drew upon English history and the “long struggle for parliamentary supremacy” against “Tudor and Stuart monarehs during which successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators” from publicly opposing the Crown. Johnson, 383 U.S. at 178, 86 S.Ct. 749; see also Tenney, 341 U.S. at 372, 71 S.Ct. 783 (“The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries.”).
And while it is true that, once it attaches, the Clause “is an absolute bar to interference” with legislators, Eastland, 421 U.S. at 503, 95 S.Ct. 1813 (citing Doe v. McMillan, 412 U.S. 306, 314, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973)), recognizing *671 that the privilege is absolute once it attaches begs the question whether the Clause attaches to begin with.[10] Significantly, in Brown & Williamson we expressly recognized that the Clause’s “testimonial privilege might be less stringently applied when inconsistent with a sovereign interest,” such as the conduct of criminal proceedings. 62 F.3d at 419-20 (distinguishing Gravel’s criminal context from civil subpoena). My colleagues qualify Brown & Williamson’s reference to Gravel, noting “it [was] not a Member who [was] subject to criminal proceedings” or process in Gravel. Maj. Op. at 663. Yet, to the extent the majority reads Brown & Williamson to limit Gravel to process served on a congressional aide during a criminal investigation of a third party, that reading mischaracterizes both Brown & Williamson and Gravel. Gravel’s holding that the Clause does not “immunize Senator or aide from testifying at trials or grand jury proceedings involving third-party crimes” is replete with observations that the Clause “provides no protection for criminal conduct ... performed at the direction of the [Member] ... or done without his knowledge” by an aide. Gravel, 408 U.S. at 622, 92 S.Ct. 2614. Gravel makes unmistakably clear that a Member — not just a staffer — is subject to criminal liability and process, see, e.g., Gravel, 408 U.S. at 626, 92 S.Ct. 2614 (Clause “does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts” (emphasis added)), so that Brown & Williamson’s reference to “Gravel’s sensitivities to the existence of criminal proceedings against persons other than Members of Congress” does no more than describe the Gmvel facts, Brown & Williamson, 62 F.3d at 419. Indeed, Gravel “refus[ed] to distinguish between Senator and aide in applying the Speech or Debate Clause,” Gravel, 408 U.S. at 622 (emphasis added), finding instead the existence of criminal proceedings dispositive, id. at 626. As Gravel noted, his aide’s privilege derives from the Member’s. Id. at 616-17 (describing aide as Member’s “alter ego[ ]”). Because Gravel stresses the significance of criminal proceedings, rather than their target, and because his aide can invoke the Clause only if the Member can do so, the majority is wrong in maintaining that Gravel’s language as construed in Brown & Williamson is limited to “third-party” crime.[11]
Moreover, as the government points out, to conclude that the Clause’s shield protects against any Executive Branch exposure to records of legislative acts would jeopardize law enforcement tools “that have never been considered problematic.” Appellee’s Br. at 37; see also Rayburn, 432 F.Supp.2d at 110 (“Carried to its logical conclusion, this argument would re *672 quire a Member ... to be given advance notice of any search of his property, including property outside of his congressional office, such as his home or car, and further that he be allowed to remove any material he deemed to be covered by the legislative privilege prior to a search.”). If Executive Branch exposure alone violated the privilege, “agents ... could not conduct a voluntary interview with a congressional staffer who wished to report criminal conduct by a Member or staffer, because of the possibility ... that the staffer would discuss legislative acts in ... describing the unprivileged, criminal conduct.” Appellee’s Br. at 38. Such a rule would also “presumably apply to surveillance of a Member or staffer who might discuss legislative matters with another Member or staffer.” Id. Furthermore, “[depriving the Executive of the power to investigate and prosecute and the Judiciary of the power to punish bribery of Members of Congress is unlikely to enhance legislative independence.” Brewster, 408 U.S. at 525 (emphasis added); see id. at 524-25 (reasoning that “financial abuses by way of bribes, perhaps even more than Executive power, would gravely undermine legislative integrity and defeat the right of the public to honest representation”). On the other hand, limiting the law enforcement tools that may be used to investigate Members does undermine the “legitimate needs of the judicial process,” specifically, the “primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions.” Nixon, 418 U.S. at 707. Recognizing the strength of these constitutional interests, the Supreme Court limited the scope of executive privilege — which is unquestionably a confidentiality rule-by permitting in camera judicial review of executive records to meet “[t]he need to develop all relevant facts” in a criminal prosecution. Id. at 709. The majority, in barring Executive Branch execution of a search warrant — and, by extension, other common investigatory tools — based on mere exposure to privileged records, checks the Judicial Branch as well. Cf. Brewster, 408 U.S. at 508 (“speech or debate privilege was designed to preserve legislative independence, not supremacy”) (emphasis added).[12]
In sum, I believe the Executive Branch’s execution of a search warrant on a congressional office-with its unavoidable but minimal exposure to records of legislative acts-does not constitute “questioning]” within the meaning of the Speech or Debate Clause. On this reading of the Clause, Rep. Jefferson remains subject to the same criminal process that applies to his constituents. See Gravel, 408 U.S. at 626. As “[t]he laws of this country allow no place or employment as a sanctuary for *673 crime,” Williamson v. United States, 207 U.S. 425, 439, 28 S.Ct. 163, 52 L.Ed. 278 (1908) (quoting King v. Willkes, 2 Wils. 151 (1763)), I would conclude that the Speech or Debate Clause does not bar the Executive Branch’s execution of a search warrant on a congressional office and, accordingly, deny Rep. Jefferson’s Rule 41(g) motion.[13]

. The Clause provides that "for any Speech or Debate in either House” "[t]he Senators and Representatives” "shall not be questioned in any other Place.” U.S. Const. Art. I, § 6, cl. 1 (emphases added).

. Contrary to the majority's assertion that "[t]he Executive does not argue” that the Clause’s “bar on compelled disclosure” "does not apply in the criminal as well as the civil context,” Maj. Op. at 660, the government expressly argues that "[t]he execution of a search warrant ... is far removed from the core concerns animating the Clause,” Appel-lee's Br. at 44, and therefore "the protections of the Clause ... cannot extend to precluding search warrants,” id. at 45. With respect to our precedent, moreover, the government asserts that “Brown & Williamson itself distinguished between civil subpoenas and criminal proceedings, and limited its holding to the former.” Id. at 47. Finally, the government repeatedly emphasizes the consequences for law enforcement if a non-disclosure rule is recognized in the criminal context. See id. at 37-38.

. See infra pp. 659-60.

. They include 18 U.S.C. § 201 (bribery of public official), 18 U.S.C. §§ 1343, 1346 and 1349 (wire fraud and deprivation of honest services), 15 U.S.C. §§ 78dd-l et seq. (bribery of foreign official) and 18 U.S.C. § 371 (conspiracy to commit bribery, wire fraud and bribery of foreign official). See Warrant Aff. at JA 7.

. The warrant includes "special procedures in order to minimize the likelihood that any potentially politically sensitive, non-responsive items in the Office will be seized” by "identify[ing] information that may fall within the purview of the Speech or Debate Clause ... or any other pertinent privilege.” Warrant Aff. at JA 79; see also id. at JA 80-87 (directing search team to seize only records responsive to warrant and to provide potentially privileged records to Rep. Jefferson and to district court to determine privilege vel non); Search Warrant (May 21, 2006), reprinted in JA at 3 (incorporating Warrant Affidavit by reference).

. The majority is incorrect in suggesting that I "fail[ ] to distinguish between the lawfulness of searching a congressional office pursuant to a search warrant and the lawfulness of the manner in which the search is executed.” Maj. Op. at 661. The distinction is what these fourteen pages discuss. The warrant was lawfully issued because it does not seek evidence of "[a] legislative act ... generally done in Congress in relation to the business before it,” United States v. Brewster, 408 U.S. 501, 512, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), but rather evidence of crimes, see supra pp. 655-56. Unlike the majority, however, I believe that neither the Supreme Court nor Brown & Williamson holds that the Clause precludes Executive Branch execution of a search warrant. See infra pp. 657-61.

.Rep. Jefferson places considerable emphasis on the fact that "the executive branch executed a search warrant on the legislative office of a sitting Member of Congress for the first time in the history of the United States.” Appellant's Br. at 1. That does not mean that the Executive Branch is without power to execute such a warrant; it just as likely indicates that never before has the Executive Branch found its use necessary. Indeed, this unique moment in our nation's history is largely of the Representative’s own making. For months, the government repeatedly tried and failed— due in part to Rep. Jefferson’s invocation of his Fifth Amendment right — to obtain records in his congressional office via a series of subpoena duces tecum. See SA at 54-74. Only after failing to obtain the records through investigative means within Rep. Jefferson’s ability to control did the government turn to a search warrant, which minimizes Rep. Jefferson’s role — and his Fifth Amendment right. Moreover, Rep. Jefferson’s proposed method of warrant execution — first sealing his office and allowing him to separate privileged from non-privileged records-effectively eliminates the distinction between a search warrant and a subpoena. His proposal would resurrect his Fifth Amendment right because presumably he would respond as he did to the subpoena duces tecum. See infra pp. 657-58.

. "[T]he physical search of the Office [was] conducted by Special Agents ... [with] no substantive role in the investigation” of Rep. Jefferson. Warrant Aff. at JA 80. These " 'non-case agents' " reviewed the records in Rep. Jefferson’s office only "to determine if they [were] responsive to the list of items” in the warrant, thereafter "deliver[in] the seized ... records to” the Filter Teams. Id.

. Cf. U.S. Const. Art. I, § 6, cl. 1: "The Senators and Representatives ... shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same ....” (emphasis added).

. In concluding that "there is no reason to believe that the [nondisclosure rule] does not apply in the criminal as well as the civil context,” Maj. Op. at 660, my colleagues first acknowledge that "Brown & Williamson involved civil litigation,” id. at 660. Nonetheless they believe Brown & Williamson s discussion of the Clause was "more profound,” applying equally in the criminal context merely because it “repeatedly referred to the functioning of the Clause in criminal proceedings.” Id. Likewise, my colleagues’ notion that Brown & Williamson applies to criminal matters because the Clause’s "bar on corn-pelled disclosure is absolute,” id. at 660, again begs the question whether Brown & Williamson's non-disclosure rule applies to criminal matters at all.

. Unlike the Brown & Williamson dicta, Gravel's discussion of the Clause's applicability to Members should direct our analysis. See United States v. Dorcely, 454 F.3d 366, 375 (D.C.Cir.2006) ("'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative' ” (quoting Sieira Club v. EPA, 322 F.3d 718, 724 (D.C.Cir.2003))).

. Again in dicta, Brown & Williamson rejected the Third Circuit’s holding in In re Grand Jury Investigation, 587 F.2d 589 (3d Cir.1978), that the Clause merely prohibits evi-dentiary use of records of legislative acts but not their disclosure, concluding instead that the interest in protecting the functioning of the legislature may permit the Congress "to insist on the confidentiality of investigative files," Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 420 (D.C.Cir.1995). And again the criminal context distinguishes Brown & Williamson’s dicta from this case. For example, in Brewster, a case involving the criminal prosecution of a Member, the Supreme Court described the violation of the Clause that occurred in United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966)—another criminal case — as arising from "the use of evidence” of a legislative act to support the indictment. Brewster, 408 U.S. at 510, 92 S.Ct. 2531 (emphasis added). According to Brewster, "a Member of Congress may be prosecuted under a criminal statute provided that the Government’s case does not rely on legislative acts or the motivation for legislative acts.” Id. at 512, 92 S.Ct. 2531. Thus, in the criminal context the Supreme Court has indicated that it is the Executive Branch’s evidentiary use of legislative acts, rather than its exposure to that evidence, that violates the Clause.

. At trial Rep. Jefferson may assert Speech or Debate Clause immunity to bar the use of records he claims are privileged. Cf. Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 13-16 (D.C.Cir.2006) (affirming denial of Member's motion to dismiss on Speech or Debate Clause ground but noting that even "[w]hen the Clause does not preclude suit altogether,” it "may preclude some relevant evidence”) (en banc), cert. denied, Office of Sen. Mark Dayton v. Hanson, - U.S. -, 127 S.Ct. 2018, 2020, 167 L.Ed.2d 898 (2007); Johnson, 383 U.S. at 185 ("With all references to [legislative material] eliminated [from the indictment], we think the Government should not be precluded from a new trial on this count, thus wholly purged of elements offensive to the Speech or Debate Clause.”). At this stage, however, Rep. Jefferson is entitled only to copies of the records seized by the government and judicial review of any record he claims is privileged, as our July 28, 2006 order provides. See United States v. Rayburn House Office Bldg., Room 2113, No. 06-3105 (D.C.Cir. July 28, 2006). To the extent the majority suggests that-if a Member can show disruption of his legislative activities-the government may be required to return non-privileged material to remedy a violation of the Clause, Maj. Op. at 665-66, thereby potentially depriving the Executive Branch of records bearing on criminality, it is a suggestion I categorically reject.